UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA SMITH,

    Plaintiff,

v.                                            Case No. 06-14758

CARO CARBIDE CORPORATION,        HONORABLE AVERN COHN
a Michigan corporation,

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING DEFENDANT CARO CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

This is an employment case. Plaintiff Donna Smith (Smith) is suing defendant Caro Carbide Corporation (Caro) for events arising out of her employment at Caro. Essentially, she says that during her employment she was subjected to sexual harassment by her fellow employee, Timothy Sylver (Sylver),[1] and was discharged for complaining about the harassment. She makes claims of sexual harassment and retaliation, in violation of the Michigan Civil Rights Act, M.C.L. § 37.2201 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[2]

Before the Court is Caro's motion for summary judgment. For the reasons that

---

[1]Smith also sued Sylver, but later dismissed her claims against him.

[2]Smith also asserted a claim against Caro for violation of the Family Medical Leave Act, 29 U.S.C. § 2601, which she later dismissed.

follow, the motion is DENIED.

## II. Background

The material facts as gleaned from the record follow.[3]

Smith began working for Caro in November 1979 as a shipping and receiving clerk. Caro is a small machine shop whose primary business is grinding tools for companies that manufacture products. Caro's President is Richard Cieszkowski. At all relevant times, he was in charge of human resources and company policies regarding discrimination. His brother, Robert Cieszkowski, was Vice President and in charge of sales at the time of Smith's termination.

Smith worked for Caro as a clerk until her termination on March 4, 2005 for alleged insubordination.[4] Smith was the only woman on the shop floor during the entire time she worked for Caro.

Smith alleges that from 1988 until February 2005, she was subjected to unwanted sexual harassment by Sylver,[5] her co-worker, who created a hostile work

---

[3]Neither party complied with the Court's requirements for a motion for summary judgment. Specifically, Caro did not file a statement of material facts not in dispute, and Smith, in turn, did not file a counter-statement of disputed facts. Neither party highlighted the exhibits.

[4]Smith worked for Caro from 1979 to 1983 until the birth of her son. She returned to Caro in 1988.

[5]Sylver started working at Caro in 1976 as a surface grinder. He worked there until December 2006 when he left to join a company which performs the same kind of work as Caro.

2

environment. Smith says that "the sexual harassment primarily consisted of obscene gestures and lewd comments of a sexual nature, unwanted sexual propositions, spreading obscene lies about her, and posting pornographic pictures in her work area." Smith's brief at p. 2.

Smith outlines the following alleged incidents of harassment involving Sylver which are extracted from her EEOC statement. The incidents are broken down into incidents Smith witnessed and incidents involving Sylver that Smith either did not witness but heard about or Smith simply believes involved Sylver.

<u>Incidents witnessed by Smith</u>:

- In 1988 or 1989, Sylver had the top of his toolbox filled with pornographic pictures of women and turned his toolbox to face Smith

- Sometime in 1990-1992, Sylver waived a hammer between his legs and shake the hammer at Smith

- In 1993, Sylver would make lewd gestures towards photos of naked women and would say "women are only good for f— in the a–"

- In 1993, Sylver stated that "women are so lonely and desperate for companionship that [Sylver] could get any of them, any man can."

- In 1997-1998, Sylver waived a hotdog between his legs

<u>Incidents Smith did not witness but heard about or believes involved Sylver</u>:

- In 1988 or 1989, Sylver bragged about taking a 17 year-old-girl to bed and brought in what he said was audiotape of the encounter. Smith, however, never heard the audiotape and was not working at Caro at the time it was supposedly played

- In 1990-1992, Sylver supposedly placed nude photos on Smith's work table. Smith admits she often did not see the photos and never saw Sylver place them on her work table

3

- Sometime in 1993, Smith arrived at work to find a sponge labeled "super maxi pad" on her work table. She assumed that Sylver did it because she saw him laughing

- In 1995-1996, Sylver supposedly threw cigars into the women's toilet. Smith never actually saw him do this.

- In 1990, Sylver told Robert Cieszkowski that Smith "wanted him." Sylver supposedly made a similar statement to a fellow employee, Gary Monroe, in 1999 or 2000

- On April 5, 2000, Sylver placed a nude photo on company letterhead on a piece of equipment outside the women's restroom. Smith removed the photo and complained to Richard Cieszkowski. Sylver was disciplined for improper use of company letterhead.

- In 2001-2003, Sylver supposedly put cigarette ashes on Smith's work phone, although she never saw him do so

- In 2003, Sylver supposedly turn on the lights in the whole facility except for the area over Smith's work table

- In 2004, while watching television with a group of male employee's Sylver commented that he would have more interest in the news if a female news reporter removed her shirt. Smith was not present during this incident but another co-worker informed her of the comment.

- In 2004, Sylver supposedly would ask other employees for cigarettes and them inform the male employees that he was trying to quit smoking, but could not because Smith kept staring at him. Sylver did not make these comments directly to Smith.

- In 2005, Sylver stated that he would have sexual relations with a female employee at Caro but only for a short while. The comment was not made in Smith's presence

- On February 23, 2005, Sylver told fellow employee Gary Monroe that Smith wanted to "f— him, but he would not do it." The next day, Monroe told another employee, Don Gardel, about the comment. Gardel then told Smith what Sylver had said to Monroe. Smith then asked Monroe directly what Sylver had said. On February 25, 2005, Smith complained to Richard Cieszkowski orally and in writing about the comment. Richard and Robert Cieszkowski both met with Sylver and Monroe and Gardel. Sylver denied making such a statement.

On February 25, 2005, Smith says complained about Sylver's February 23, 2005 comment by Sylver. She met with Richard and Robert Cieszkowski and told them she was going to sue. Richard Cieszkowski then told Smith that if she sued Sylver, she would have to sue Caro. He also told her that he was going to have to get Caro's attorney, Ed Ewald involved. Smith apparently explained it was not her intent to sue Caro.

Smith reported to work the next work day, February 28, 2005, and worked a full day without incident. The next day, March 1, 2005, Robert Cieszkowski asked Smith to meet with Ewald. Smith met with Ewald to discuss her complaint about Sylver. Smith told Ewald about Sylver's behavior and the incidents described above. After the meeting, Smith was upset and went home for the day.

On March 2, 2005, Ewald met with Gardel and Monroe together regarding Smith's complaint. He also met separately with Robert Cieszkowski. Gardel and Monroe informed Ewald about some Sylver's conduct.

Smith did not report to work on March 2, 2005 due to illness. Robert Cieszkowski called Smith that morning, sometime between 9:00 a.m. and 10:00 a.m. to ask her whether she was coming into work. Smith said she did not feel well and was not sure when she would come back. Robert Cieszkowski was left with the impression that Smith might never come back.

Smith did not report to work on March 3, 2005. Again, Robert Cieszkowski called Smith and left a message. She returned the call later in the afternoon. During that conversation, the substance of which is disputed, Robert Cieszkowski offered to separate her from Sylver by erecting a wall between them. Robert Cieszkowski testified

at deposition that Smith then called him and his brother "spineless and greedy" and used other profanity. Smith, however, denies calling Robert or Richard Cieszkowski any names or using profanity.

On March 3, 2005, Caro placed an ad in the Macomb Daily newspaper for a shipping and receiving clerk. The ad appeared on March 4, 2005.

On March 4, 2005, Smith consulted with a doctor, who advised her to take an immediate medical leave of absence. Her doctor faxed Caro a copy of his order that she stop working that same day. Smith did not report to work that day.

On March 14, 2005, Smith received a letter from Caro stating that she was being terminated effective March 4, 2005 for "insubordination."

At the time of her termination, Smith was Caro's only shipping and receiving clerk.

On April 19, 2005, Smith filed a charge with the EEOC claiming sexual harassment (hostile work environment) and retaliation. On June 30, 2005, Smith and Caro received a letter from the District Director stating in part that "[e]xamination of the evidence reveals reasonable cause to believe that [Smith's] allegations are true." The EEOC was unable to resolve the matter with the parties. On August 1, 2007, it issued Smith a right to sue letter. Smith filed her complaint on October 20, 2006.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be

granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV. Analysis

A. Sexual Harassment

1.

Smith asserts claims of sexual harassment under state and federal law. The legal standards for both are set forth below.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his[/her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986); Black v. Zaring Homes, Inc., 104 F.3d 822, 825 (6th Cir.1997). Sex discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). However, not all conduct that has sexual overtones is forbidden under the statute. Meritor, 477 U.S. at 67. The harassment must affect a "term, condition, or privilege" of the employment. Id. The Supreme Court in Harris stated that:

> mere utterance of an ... epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim

> does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

510 U.S. at 21-22 (internal citations omitted).

In Meritor, the Supreme Court stated that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victm's] employment and create an abusive working environment." 477 U.S. at 67 (internal citations omitted). The Supreme Court in Harris set forth a nonexclusive list of factors to consider when determining whether the environment was hostile or abusive, including the frequency and severity of the conduct, whether it was physically threatening or humiliating, whether it was merely an utterance, and whether it unreasonably interfered with the person's work performance.

In order for a plaintiff to establish a prima facie case of hostile work environment based on sexual harassment by a co-worker under Title VII, the following elements must be established:

> (1) [the plaintiff] was a member of a protected class; (2) [the plaintiff] was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action.

Fenton v. HiSAN, Inc., 174 F.3d 827, 829-30 (6th Cir.1999).

The reasonableness standard announced in factor five above holds an employer liable only when the employer responds to charges of co-worker sexual harassment and demonstrates "indifference or unreasonableness in light of the facts the employer knew or should have known." Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868, 873 (6th

Cir. 1997). This analysis involves both objective and subjective components: "(1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct 'severe or pervasive.' "Williams v. Gen. Motors Corp., 187 F.3d 553, 568 (6th Cir.1999). Additionally, a court must look to the "totality of the circumstances" in determining a hostile work environment claim. Harris, 510 U.S. at 23. "Even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." Williams, 187 F.3d at 563.

The standards are similar under state law. Under Michigan's Elliot Larsen Civil Right Act (ELCRA), "[a]n employer shall not do any of the following: "(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. M.C.L. § 37.2202(1) and (1)(a). M.C.L. § 37.2103(I) further provides in pertinent part that,

> "[d]iscrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
> * * *
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, ... or creating an intimidating, hostile, or offensive employment ... environment.

Radtke v. Everett, 442 Mich. 368, 381 (1993), (Sexual harassment that falls under M.C.L. § 37.2103(I)( iii ) is commonly labeled hostile environment harassment).

To establish a claim of hostile environment harassment in the workplace, a plaintiff must demonstrate that: (1) the employee belonged to a protected group; (2) the

10

employee was subjected to conduct or communication on the basis of sex; (3) the conduct or communication was unwelcome; (4) the unwelcome conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. Rymal v. Baergen, 262 Mich. App. 274, 312 (2004). Only conduct or communication that is sexual in nature can constitute harassment within the meaning of the statute. Haynie v. State, 468 Mich. 302, 312 (2003).

As to employer liability, an employer is liable for sexual harassment resulting in a hostile work environment only if it failed to investigate and take prompt, appropriate remedial action after having received actual or constructive notice of the harassing conduct. Chambers v. Trettco, 463 Mich. 297 (2000).

2.

Here, it is not disputed that Smith satisfies the first three elements under both state and federal law because she is a member of a protected class who was subjected to unwelcome harassment, and the harassment complained of was based on sex. Caro does not argue that the harassment interfered with her work performance. Caro says that there is no genuine issue of material fact as to whether the harassment "created a hostile or offensive work environment that was severe and pervasive." Fenton, 174 F.3d at 830. Caro says that of the instances, set forth above, (1) many occurred outside the limitations period,[6] (2)

---

[6]This argument pertains to Smith's claim under state law, as the Michigan Supreme Court has overruled the "continuing violation" theory with respect to discrimination claims. See Garg v. Macomb Co. Community Mental Health Sys., 472 Mich. 263 (2005). The continuing violations doctrine permitted recovery for incidents

11

did not involve any physical contact, (3) many took place outside Smith's presence, (4) many were not gender based, and (5) at best constitute off hand comments and isolated incidents which are not actionable.

---

that occurred outside the applicable limitations period, if an individual asserted a series of allegedly discriminatory acts or statements that were so sufficiently related that they constituted a pattern of harassment or discrimination and at least one of the acts alleged occurred within the limitations period. Sumner v. Goodyear Tire & Rubber Co, 427 Mich. 505, 538-539; 398 NW2d 368 (1986), overruled Garg, supra at 266. In footnote 14 of the Garg opinion, the Michigan Supreme Court expressly rejected the proposition that acts falling outside the statute of limitations are admissible as background evidence. Thus, Caro argues that the Court can only consider alleged discriminatory acts occurring three years prior to the filing of the complaint, i.e. after October 2003, in determining whether Smith has made out a sexual harassment claim under the ELCRA. However, as counsel for Smith noted at the hearing, the Michigan Supreme Court later amended its opinion in Garg and eliminated footnote 14. In Ramanathan v. Wayne State Univ. Bd. of Governors, No. 266238, 2007 WL 28416 (Jan. 4, 2007) (unpublished), the Michigan Court of Appeals addressed Garg and determined that incidents of harassment occurring outside the limitations period are still admissible to support the portions a claim that are not time-barred, explaining:

> . . . the implications of Garg are unclear with respect to the admission of evidence in other cases. Although the Court in Garg placed some significance on the statute of limitations in MCL 600.5805 when reviewing the evidence in that case, the question before the Court was whether the jury's verdict, based on alleged acts of retaliation, could be sustained under the standards for reviewing judgments notwithstanding the verdict. Garg, supra at 271-272. The evidence was viewed in a light most favorable to the plaintiff to determine if she could establish a claim for unlawful retaliation occurring within the limitations period. Id. at 272, 278.
>
> Despite the language in Garg, referencing limitations on the admissibility of evidence in that case, we cannot read the amended opinion so broadly as to exclude per se all background evidence of alleged discriminatory or retaliatory acts occurring outside the limitations period. Absent clear guidance in this regard from the Supreme Court, we conclude that this evidence is subject to the rules of evidence and other applicable governing law, and its admissibility is within the discretion of the trial court.

2007 WL 28416 at * 3. The Court agrees with the Michigan Court of Appeals' interpretation. As such, evidence of sexual harassment occurring prior to October 2003 may be considered as background evidence to support her claim under the ELCRA.

The Court disagrees with Caro's characterization of the record.  Considering the totality of the circumstances, particularly the incidents witnessed by Smith, as well as the incident in 2002 involving the pornographic picture and Sylver's comment on February 23, 2005, after both of which she complained, viewing the evidence in the light most favorable to Smith, there is a genuine issue of material fact as to whether Smith was subjected to a sexually hostile work environment as a result of Sylver's conduct.  While Caro admits that Sylver's conduct was "boorish," the Court finds that Sylver's conduct at a minimum creates an issue of fact as to whether a reasonable person would find it beyond "boorish" such as to constitute a sexually harassing environment.

As to Caro's liability, Caro says that it took prompt remedial action each time Smith complained.  For instance, in 2002, when Smith verbally complained about the pornographic picture on Caro letterhead, Caro took action and disciplined Sylver.  Smith, however, says that Sylver was only given a warning for improper use of company letterhead, and was not counseled against the nature of the photo.  Based on this record, a genuine issue of material fact exists as to whether Caro's response was appropriate.  Likewise, in 2005 when Smith lodged a written complaint about Sylver's comment about her "wanting" him, Caro did investigate and offered to erect a wall between Smith and Sylver.  While Caro took action, reasonable minds could dispute whether it was truly remedial.  Moreover, Smith testified at deposition that she continually complained to Caro about Sylver over the years, and was essentially told to ignore him.  Caro does not address Smith's testimony in this regard.  Overall, summary judgment is not proper on Caro's liability for sexual harassment.

B.  Retaliation

1.

Smith claims that Caro's actions in response to her complaints about Sylver's harassment constitute retaliation under state and federal law.  In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the McDonnell Douglas framework."  Abbott v. Crown Motor Company, Inc., 348 F.3d 537, 542 (6th Cir.2003).  Here, the parties proceed under the McDonnell Douglas framework.  To establish a prima facie case of unlawful retaliation under Title VII, the plaintiff must establish that: (1) she engaged in an activity that Title VII protects; (2) defendant knew that she engaged in this protected activity; (3) the defendant subsequently took an employment action adverse to the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists.  Id.  "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met."  Id.  If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse action.  Id.  If the defendant meets this burden, the plaintiff must then establish that the proffered reason was a mere pretext for discrimination by establishing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action.  Id.  "If the plaintiff demonstrates that the defendant's proffered, non-discriminatory reason is a pretext, then the fact finder may infer unlawful retaliation."  Id. (emphasis original).  "Throughout the entire McDonnell Douglas framework, the plaintiff bears the burden of persuasion."  Id.

Likewise, under state law, to establish a prima facie case of retaliation under the

ELCRA, a plaintiff must show (1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action. DeFlaviis v. Lord & Taylor, Inc., 223 Mich. App. 432, 436 (1997). Michigan courts also recognize that "a failure to address supervisor's decision not to take action to stop harassment by co-workers in retaliation for an employee's opposition to a violation of the Civil Rights Act can constitute an adverse employment action. Where the harassment is sufficiently severe, a supervisor's failure to take action to respond can constitute a materially adverse change in the conditions of employment." Meyer v. City of Center Line, 242 Mich. App. 560, 571 (2000).

2.

Caro first says that Smith's retaliation claim fails because the mere proximity in time between her complaint and her termination is insufficient to make out a prima facie claim. This argument lacks merit. In general, temporal proximity alone is insufficient to establish a causal connection. The Sixth Circuit has stated "[a]lthough temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724, 737 (6th Cir.2006). One of the cases relied on in Randolph is Nguyen v. City of Cleveland, 229 F.3d 559 (6th Cir.2000). In Nguyen, the court cited with approval its holding in an unpublished case, that "temporal proximity in the absence of other evidence of causation is not sufficient to raise an inference of a causal link." Id. at 566 (citing Parnell

v. West, 1997 WL 271751, *2-3 (6th Cir.1997)). The court in Nguyen court conceded "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference." Id. at 567.

The Sixth Circuit came closer to identifying what "circumstances" it was referring to in DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004). In DiCarlo, the Sixth Circuit held "[w]ith regard to ... establishment of a 'causal connection' between the protected activity and the adverse employment action ... that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." The DiCarlo court further noted "this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." Id. More recently, in Denhof v. City of Grand Rapids, 494 F.3d 534, 544 n. 9 (6th Cir.2007), the Sixth Circuit held "the temporal proximity between a plaintiff's protected activity and the adverse employment action can satisfy the causal connection requirement."

Here, on February 25, 2005 she informed Caro that she was going to file a lawsuit relating to Sylver's conduct. Just days later, on March 4, 2005, Caro terminated her for insubordination. This establishes a close connection sufficient to make out a prima facie case.

Caro also says that summary judgment is appropriate because it articulated a legitimate reason for Smith's termination - her insubordination during her conversation with Robert Cieszkowski. Smith says she has established pretext. The Court agrees with Smith. First, Smith denies using profanity in the conversation. Second, Caro

placed an ad for a shipping and receiving clerk, the same position held by Smith, just days after she informed them about a possible lawsuit and before she was terminated. Third, Caro's employee handbook says that termination must take place after three warnings. It is undisputed that did not occur here. While Caro makes much of the fact that Smith did not report to work for three days after the March 1 meeting, her termination letter references the conversation with Robert Cieszkowski, not her failing to report to work, as the reason for her termination. Moreover, although Smith did not call in to Caro to indicate she would not be reporting to work, Robert Cieszkowski called her and she told him she would not be reporting to work because she did not feel well. Caro does say that Smith violated any policy by not calling in to work. The fact is that Smith, a 20-year employee, was terminated within days of informing Caro that she was considering suing. On this record, Smith has established pretext sufficient to survive summary judgment on her retaliation claim.

  SO ORDERED.

             s/Avern Cohn
             AVERN COHN
             UNITED STATES DISTRICT JUDGE

Dated: December 10, 2007

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 10, 2007, by electronic and/or ordinary mail.

             s/Julie Owens
             Case Manager, (313) 234-5160